**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael Irvin WILLARD, Defendant–Appellant.**

No. 89–5244.

United States Court of Appeals, Fourth Circuit.

Argued March 9, 1990.

Decided July 18, 1990.

Margaret Brooke Murdock, Asst. Federal Public Defender, Baltimore, Md., argued (Fred Warren Bennett, Federal Public Defender, Baltimore, Md., on the brief), for defendant-appellant.

Gregory Welsh, Asst. U.S. Atty., Baltimore, Md., argued (Breckinridge L. Willcox, U.S. Atty., Baltimore, Md., on the brief), for plaintiff-appellee.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

MURNAGHAN, Circuit Judge:

The Second Circuit, in *United States v. Bermingham*, 855 F.2d 925 (2d Cir.1988), enunciated the overlapping guidelines doctrine, whereby disputes as to applicable sentencing guidelines ranges need not be resolved when the sentence imposed would be the same under either of the potentially applicable ranges. We previously have ac-

cepted the overlapping guidelines doctrine. *See United States v. White*, 875 F.2d 427, 432–33 (4th Cir.1989). We are here asked whether a judge could properly impose sentence within an overlap and avoid resolving a factual dispute solely because of the existence of that overlap. We answer the question in the negative; rather, in situations such as are here presented, before imposing sentence within an overlap, the judge must make an express determination that the sentence would be the same under either of the potentially applicable ranges in the absence of any dispute as to which range applies.

Michael Willard pleaded guilty to one count of conspiracy to distribute narcotics. The plea bargain with the Government, without containing an agreement as to what the proper sentencing guideline range should be, indicated that the Government would recommend a sentence at the low end of whatever range was deemed applicable. The appropriate guideline range was, therefore, of considerable importance and depended on resolution of a factual question as to the extent of Willard's involvement in the drug conspiracy.

■ When Willard's sentencing came before the United States District Court for the District of Maryland, the parties adopted conflicting views as to the applicable range. Willard claimed that he entered the conspiracy some time after its commencement and was not responsible for all of the drugs distributed by the conspiracy. On that view of things, he argued for a range of 70 to 87 months (adjusted offense level of 26). A defendant is not necessarily held responsible at sentencing for the entire criminal conduct of the conspiracy. Rather, he is held accountable only for the criminal conduct in furtherance of the conspiracy which was either known to him or "reasonably foreseeable" by him. *See* Sen-

tencing Guidelines §§ 2D1.4 and 1B1.3 commentary; *see also United States v. Vinson*, 886 F.2d 740, 742 (4th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990). The Government, on the other hand, attempted to hold Willard responsible for the entire criminal conduct of the conspiracy and contended that the range should be 87 to 108 months (adjusted offense level of 28).

The sentencing judge felt it unnecessary to make a determination as to Willard's foreseeability of the extent of the conspiracy, although we have previously held "the determination of the foreseeability of the extent of the overall conspiracy is often critical." *Vinson*, 886 F.2d at 742. The judge's rationale was that the overlap of 87 months made for "a classic case where I have a perfect situation where I don't have to even rule." [1] He went on to say: "I'm not going to make any findings of facts on that [foreseeability] issue and I've got a perfect reason not to [do so]." The judge thereby finessed altogether the question of where, within the guidelines, the sentence should fall. The sentence he chose, 87 months, was the very highest on one theory but the lowest on the other.

■ If the judge had determined that 87 months was the appropriate penological decision based on his belief as to its appropriateness and that he would impose such a sentence under either of the ranges regardless of which range applied, the imposition of 87 months imprisonment would have been appropriate without deciding between the ranges. *See United States v. White*, 875 F.2d 427, 432–33 (4th Cir.1989); *United States v. McCrary*, 887 F.2d 485, 489 (4th Cir.1989). But the judge did not clearly state that the sentence would definitely be 87 months under either of the ranges in the absence of any dispute as to which range was applicable.[2] Rather, the fact of over-

---

**1.** The overlap was restricted to the single possibility of 87 months. Hence employing it ruled out entirely any recourse by the district judge to the exercise of choice over a range, depending on the extent of the convict's culpability. Ranges are provided by the sentencing guidelines to give judges the maximum amount of discretion possible. *See* Sentencing Guidelines Ch. 1, Part A, Introduction 4(h) (Policy Statement).

**2.** The terms of the plea bargain made it crystal clear that the Government favored a lower-range solution depending on whatever range the district court determined was appropriate.

lap and the desire to avoid resolving disputed facts apparently were the sole motivations behind the sentence imposed on Willard.

The judge, after eliminating any need to choose between the ranges, did belatedly state that resolving the dispute "wouldn't really make any difference one way or another I think under the facts of this case." But, for several reasons, we conclude that the judge did not fulfill his responsibility to satisfy himself that, if there had been no dispute about the applicable range, the sentence imposed would have been the same under either of the ranges presented to him.

First, the equivocality of the judge's denial of "any difference" contrasts sharply with earlier unequivocal statements that he imposed an 87–month sentence primarily because the existence of the overlap allowed him to avoid resolving the dispute. The sentencing record contains ample information to conclude that the overlap itself was the motivation for the sentence, not the fact that the sentence would be the same under either of the ranges in the absence of any dispute.

Second, the judge did not express any appreciation for the factual differences between the Government's and the defendant's sentencing positions. The Government's position was that Willard should be held responsible, as a coconspirator, for the illegal distribution of drugs with the heroin equivalency of over 8 kilograms. Successfully proving that contention, or responsibility for any amount between 3 and 9.9 kilograms, would have resulted, after various calculations, in an applicable sentencing range of 87 to 108 months imprisonment.

Willard, however, contended that the extent of the entire conspiracy was not known or reasonably foreseeable by him. Apparently, he tried to show that he should be held accountable only for the distribution of narcotics with the heroin equivalency of about 1 kilogram. If Willard were successful in limiting his responsibility, as a coconspirator, to 1 kilogram, or indeed any amount less than 3 kilograms, the applicable sentencing range, after adjustments, would have been 70 to 87 months. Given these facts, the culpability of Willard would seem significantly to depend on whether the Government or Willard is right as to a basic fact that has never been resolved. It is by no means apparent why Willard's sentence would be the same regardless of who is right in the dispute. Not only did the sentencing judge fail to articulate why he considered 87 months to be appropriate irrespective of the applicable range, he failed even to mention his awareness of the factual differences, as discussed above, between the Government's and the defendant's positions.

Furthermore, the Government agreed, in the plea bargain, to "recommend that [Willard] be sentenced to the low end of his final guideline range." Willard's intention to rely on the lower end of the applicable range was a point maintained by him and a point with which the Government fully concurred from the time the plea bargain was entered. While the sentencing judge is not bound by the Government's recommendation, the judge's lack of mention of any reason why he was going to ignore it leads further to the conclusion that Willard might have received a sentence of less than 87 months if the lower range had unquestionably applied. The language of *United States v. Bermingham*, 855 F.2d 925 (2d Cir.1988), is especially pertinent:

> Situations may arise ... where a sentencing judge determines that the appropriate sentence is whatever number of months are at or near the bottom of the applicable guideline range. In such situations, it obviously matters which guideline range is applicable, *and a judge entertaining such a view could not conscientiously be satisfied that the same sentence would have been imposed simply because it happened to fall at or near the high end of a lower, overlapping guideline range.* In such circumstances, any dispute as to the applicable guideline range must be adjudicated in the trial court, and that adjudica-

tion, if challenged, must be determined on appeal.

*Id.* at 935 (emphasis added).

■ We cannot approve of sentencing a defendant to the high end of a possibly applicable range merely to avoid the decision as to which range should apply when the defendant's entry into the plea bargain was directly related to a low-range recommendation by the Government. A defendant cannot, consistent with due process, be incarcerated for a longer period of time simply because the sentencing judge is hesitant to resolve factual disputes. *Cf. Hicks v. Oklahoma,* 447 U.S. 343, 346–47, 100 S.Ct. 2227, 2229–30, 65 L.Ed.2d 175 (1980). The overlapping ranges doctrine obviates the necessity of selecting the appropriate range only when the district court expressly makes an independent determination that the sentence would be the same under either of the ranges in the absence of any dispute. The fact of overlap cannot be the motivation to justify a court's not making a most relevant factual decision and standing alone does not validate a sentence within the overlap.

Consequently, we are persuaded that decisions required to validate the sentence imposed were not made, and we, therefore, reverse the imposition of sentence with a remand to the district court for either (a) a determination of which sentencing guideline range is applicable—and where, within the limits of the applicable range, the sentence appropriately should fall—or (b) an explicit and reasoned declaration that Willard would be sentenced to 87 months imprisonment even if the lower sentencing range unquestionably applied.[3]

REMANDED.

BUTZNER, Senior Circuit Judge, concurring and dissenting:

The remarks of the district court at sentencing, which are the basis for the remand, are really nothing more than a repetition of statements found in *United States v. White,* 875 F.2d 427 (4th Cir.1989), and the Sentencing Guidelines.

In *White* we said:

As recently stated by the Second Circuit, "disputes about applicable guidelines need not be resolved where the sentence falls within either of two arguably applicable guideline ranges and the same sentence would have been imposed under either guideline range."

875 F.2d at 432 (quoting *United States v. Bermingham,* 855 F.2d 925, 931 (2d Cir. 1988)). Also, the district court's remarks are consistent with the policy statement concerning sentencing tables in the Sentencing Guidelines: .

The Commission has established a sentencing table. For technical and practical reasons it has 43 levels. Each row in the table contains levels that overlap with the levels in the preceding and succeeding rows. By overlapping the levels, the table should discourage unnecessary litigation. Both prosecutor and defendant will realize that the difference between one level and another will not necessarily make a difference in the sentence that the judge imposes. Thus, little purpose will be served in protracted litigation trying to determine, for example, whether $10,000 or $11,000 was obtained as a result of a fraud.

U.S.S.G. Ch. 1, Part A, Introduction 4(h), p.s. In this case the district court pointed out that because of the overlapping levels, little purpose would be served in determining the exact amount of drugs involved.

Of course, the district court must disclose that the sentence would have been the same regardless of the overlap. *See White,* 875 F.2d at 432–33. And this is precisely what the court did. The court considered many other factors besides the overlapping offense levels of 26 and 28. It reduced the potential sentence of 168

---

**3.** Willard also argues that the district judge improperly denied him a downward departure for post-indictment rehabilitation. Our decisions in *United States v. Bayerle,* 898 F.2d 28, 30–31 (4th Cir.1990) (court of appeals cannot review trial court's discretionary refusal to depart down-

ward), and *United States v. Van Dyke,* 895 F.2d 984, 987 (4th Cir.1990) (post-offense rehabilitative conduct cannot serve as independent basis for downward departure), demonstrate, in two different ways, that the argument is without validity.

months to the actual sentence of 87 months by granting two levels for acceptance of responsibility and four levels for substantial cooperation with the Government. It denied the defendant's request for a downward departure on the basis of post-indictment rehabilitation. It also compared the defendant's sentence with that of another member of the conspiracy who was sentenced to 108 months.

Finally, after discussing all of the factors that entered into the sentence, including the overlapping guideline ranges, the court reiterated that it made no difference whether the base level is computed to be 26 or 28 "because I think you deserve the 87 months."

In my view, the district court fully complied with the principles stated in *United States v. White* and the policy statement of the guidelines.

Moreover, it is readily apparent from the record that the Government did not violate its obligation under the plea agreement to recommend that the court sentence at the lower end of the appropriate guideline range. The Government never agreed that the level sought by the defendant was appropriate.

I concur with the court's disposition in the defendant's other assignments of error. Dissenting on the sentencing issue, I would affirm the judgment of the district court.