946 F.2d 888
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Kevin R. PLUMMER, Defendant-Appellee.
 No. 91-5135.
 United States Court of Appeals, Fourth Circuit.
 Argued May 10, 1991.
Decided Oct. 22, 1991.
As Amended Nov. 25, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, Senior District Judge. (CR-89-188-HM)
 Argued: Maury S. Epner, Assistant United States Attorney, Baltimore, Md., for appellant; Fred Warren Bennett, Federal Public Defender, Baltimore, Md., for appellee.
 On Brief: Breckinridge L. Wilcox, United States Attorney, Baltimore, Md., for appellant; Denise Benvenga, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, CHAPMAN, Senior Circuit Judge, and CLAUDE M. HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The government appeals the sentencing of Kevin R. Plummer to a sentence identical to one previously vacated by this court. The latest sentence was based on the new grounds of the defendant's post-sentencing behavior and the atypical nature of the crime. Holding that the unusual character of the crime justified the trial court's departure from the guidelines, we affirm on that basis only.
 
 I.
 A.
 
 2
 Following negotiations with the government, defendant Kevin R. Plummer pled guilty in June 1989 to a one count criminal information charging him with a violation of 18 U.S.C. § 2113(a), bank robbery by "force, violence, or by intimidation." After the United States District Court for the District of Maryland departed downward in sentencing Plummer, on the ground that he had successfully completed a pre-sentence drug rehabilitation program, the government appealed. This court vacated the sentence of the court and remanded with instructions to impose a sentence within the guideline range. United States v. Plummer, No. 89-5483 (4th Cir. May 1, 1990). Following remand, the district court departed downward and resentenced Plummer to an identical sentence based upon new grounds: Plummer's post-sentencing conduct and the aberrational nature of the crime.
 
 B.
 
 3
 On March 21, 1989 at approximately 10:40 a.m. Plummer entered the First National Bank of Maryland located at 1710 East Northern Parkway in Baltimore, Maryland and handed a teller a note which had the word "robbery" written on it. The teller was told "come on, come on, give me the money." She gave Plummer five hundred and fiftyseven dollars with a dye pack. Plummer threw away the pack and left the bank. Subsequently, he was arrested and confessed to the robbery.
 
 
 4
 Following his initial appearance, Plummer entered a ninety day residential drug rehabilitation program. He completed the ninety day program and his treatment was extended an additional ninety days upon agreement of the parties and a United States Magistrate Judge.
 
 
 5
 Pursuant to a plea agreement reached among the parties, Plummer pled guilty to one count of bank robbery. The agreement contained stipulations concerning the applicable sentencing guidelines, including stipulations that the base offense level was 18 and that Plummer was entitled to a two level reduction of the offense level for acceptance of responsibility. U.S.S.G. § 3E.1 The agreement also provided that the government would not oppose a reduction of Plummer's term of imprisonment by a period equal to the time spent in the rehabilitation program.
 
 
 6
 Prior to sentencing, the parties agreed that Plummer's criminal history category of V over-represented his criminal history and that a criminal history of IV was more appropriate. A United States Probation Officer calculated the adjusted offense level at 17 and the criminal history category at IV, thus, the guideline range was thirty-seven to forty-six months imprisonment.
 
 
 7
 At sentencing, the district court departed downward from this range based upon Plummer's successful completion of the drug rehabilitation program and sentenced Plummer to twenty-four months imprisonment.
 
 
 8
 During the fifteen months between his original sentencing and his resentencing on December 17, 1990, Plummer was incarcerated in Petersburg, Virginia. While in prison, Plummer participated in a drug rehabilitation program, earned above average work ratings, enrolled in GED classes, and was scheduled to enter a half-way house upon his release. Since resentencing, Plummer entered the half-way house. On March 19, 1991 Plummer was released from the house. He now lives with his mother in Baltimore and has begun working for a Baltimore hotel.
 
 
 9
 The district court again departed downward four levels, and again imposed a sentence of twenty-four months. From this judgment, the government elected to appeal.
 
 II.
 
 10
 The applicable sentencing guideline range for Plummer's offense is 37-46 months. He has served 24 months, including the time credit given for his drug rehabilitation treatment. Thus, the resolution of this issue will determine whether he is to leave his job and the community to serve a 13-22 month sentence. The district court based its latest downward departure on Plummer's exemplary post-sentencing conduct and the atypically nonviolent, nonthreatening nature of the bank robbery. We affirm, however, based only on the second rationale.
 
 
 11
 United States v. Van Dyke, 895 F.2d 984 (4th Cir.1990), reveals why Plummer's post-sentencing conduct cannot justify a departure from the guidelines. This Court held that defendant Harry Van Dyke's participation in a drug treatment program while in jail was considered as acceptance of responsibility; accordingly, the defendant could be entitled to a two point reduction under the sentencing guidelines, 895 F.2d 984, 987. See, U.S.S.G. § 3E1.1. Participation in the drug treatment program, however, is:
 
 
 12
 post offense conduct not 'an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission,' 18 U.S.C.A. § 3553(b), in U.S.S.G. § 3E.1 and hence cannot serve as an independent basis of departure.
 
 
 13
 Id., (emphasis supplied). Although the opinion refers to Van Dyke's " 'rehabilitative conduct' after the crime and before sentencing," our analysis is premised upon categorizing the rehabilitation as post-offense conduct. Plummer's rehabilitative endeavors precede his first sentence, and follow his second sentence. Whether his conduct is considered pre-sentence or post-sentence, it is, nevertheless, post-offense. Therefore, Plummer's analytic distinction between pre-sentencing and post-sentencing conduct, while incisive, is not consistent with precedent concerning post-offense conduct. The guidelines do not authorize a downward departure based upon post-offense conduct. See U.S.S.G. § 5.K.
 
 
 14
 The only possible basis for the trial court's sentence is the existence of "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The trial judge in basing its sentence on the aberrational quality of the crime stated:
 
 
 15
 I take into account, first of all, that while bank robbery is a serious offense,--there is no question about that--this is an instance where most of the threatening elements that accompany the usual bank robbery were not present. There is a demand note without any explicit or implicit threats. There is no simulated gun. There were not words, "I will blow your head off if you don't give me your money!" I think that is something the Court must take into account. Section 5K2.0 of the guidelines authorizes the trial court's accounting and consideration of the unusual characteristics of the crime. The guidelines state that:
 
 
 16
 Circumstances that warrant departure from the guidelines pursuant to [18 U.S.C. § 3553(b) ] cannot, by their nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the courts.... Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court.
 
 
 17
 ... [A] factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply because it was not listed does not mean that there may not be circumstances when that factor would be relevant to sentencing.
 
 
 18
 U.S.S.G. § 5K2.O. Moreover, the introductory policy statements of the guidelines reveal a judge's capacity to depart if the case stands out from the norm:
 
 
 19
 When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.... [T]he Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds in an unusual case. U.S.S.G. Ch. 1, Pt 5.A, 4(b).
 
 
 20
 At the time of Plummer's first sentencing, § 2B3.1 of the guidelines provided a base offense level of 18. This section describes offense characteristics that include the use of a gun or weapon. U.S.S.G. § 2B3.1 (1988). Moreover, this section is applied to robberies where the defendant suggested that he had a gun and told the teller he had a firearm, United States v. Norflett, 922 F.2d 50, 52 n. 3 (1st Cir.1990). See also United States v. Coe, 891 F.2d 405, 411 (2d Cir.1989) (claiming to be armed is an unexceptional means of satisfying the intimidation requirement); and United States v. McVicar, 907 F.2d 1, 2 (1st Cir.1990) (gesture indicating the possession of a weapon is a common method of bank robbery). Furthermore, it is also typical to effectuate the crime with a threat, either spoken or written. See e.g., United States v. Epps, 438 F.2d 1192, (5th Cir.1971), (in an appeal on the grounds of insufficiency of evidence, robbery note found to be sufficient evidence of intimidation under 18 U.S.C. § 2113(a)). Finally, a robbery may be carried out by intimidating physical gestures such as a robber's leap over the bank teller's counter with an obviously toy gun. See United States v. Lucas, 619 F.2d 870, 871 (10th Cir.1980).
 
 
 21
 In this robbery, there was little if any indication of force or violence. There was no feigned weapon. Moreover, Plummer's note, a model of brevity, simply stated "robbery" without an explicit threat. The record does not reveal that Plummer used any physical gestures that were very forceful, violent, or intimidating. This court has recognized in cases determining that there was sufficient evidence for a finding of intimidation under 18 U.S.C. § 2113(a), that "there was evidence that the defendant either explicitly threatened harm, or implicitly possessed a weapon." United States v. Wagstaff, 865 F.2d 626, 628 (4th Cir.1989). Plummer's robbery atypically reveals little of the former and none of the latter evidence. As this case comes barely within the spectrum of robberies accomplished by force, violence, or intimidation, we concur with the trial court's departure based on the unusually benign nature of the crime. While the judge may not consider post-conviction conduct in sentencing, he may infer from the atypically nonviolent conduct of the crime itself the probability of the defendant's rehabilitation and depart downward.
 
 III.
 
 22
 For the reasons set forth, we affirm Plummer's sentence.
 
 
 23
 AFFIRMED.